Hackettstown National Bank *v.* Ming.

---

HACKETTSTOWN NATIONAL BANK

*v.*

LOUISA K. MING.

1. A married woman in New Jersey is bound and estopped by all her acts done within the scope of the enabling acts, to the same extent and in the same manner as a single woman.

2. A wife made her promissory note to her husband's order and delivered it to him to enable him to procure its discount and with the proceeds pay his own debt. The husband applied for its discount to a bank official who had notice that the note was made without consideration and for discount, but did not have notice that the proceeds were to be applied for the husband's benefit. The bank official offered to discount it by a check to the wife's order, which the husband accepted and afterwards procured his wife to endorse and deliver it to him, she knowing that it was the proceeds of the discount of her note.— *Held*, that the wife was estopped from setting up against the bank that she was a mere surety on the note.

3. Complainant recovered judgment at law by default on a promissory note made by a wife to the order of and endorsed by her husband. The wife applied for and obtained an order opening the judgment with unrestricted leave to plead. She pleaded, *first*, that she occupied the position of surety on the note and was a married woman; *second*, that it was a contract made with her husband, and therefore void at law. Complainant then filed its bill in this court for relief and injunction against setting up these defences at law. Upon the trial of the issues raised this court found the defence of suretyship not sustained.— *Held*, (1) Complainant was justified in coming to this court, and was, in effect, compelled to come here by defendant's plea that the contract was between husband and wife. (2) Complainant having established his case here on the merits, defendant should not be permitted to litigate it again in the law courts.

---

On final hearing on bill, answer and proofs.

*Mr. Holloway W. Hunt* and *Mr. Alfred Mills,* for the complainant.

*Mr. James H. Neighbour,* for the defendant.

PITNEY, V. C.

This cause comes before the court under very peculiar circumstances. The complainant recovered a judgment by default in the supreme court on the 12th day of July, 1892, against the defendant, Louisa K. Ming, together with Charles H. Ming and John Swayze, for $1,143.68 in an action on contract, founded on a promissory note dated May 23d, 1892, payable fifteen days after date, for $1,100, made by John Swayze and the defendant, Louisa K. Ming, to the order of and endorsed by Charles H. Ming. Execution was issued upon it and levy made. In September, 1892, the defendant herein applied to a justice of the supreme court for a rule to show cause why the judgment should not be opened as to her and she be permitted to plead, on the ground that, at the time of the making of the note, she was the wife of her co-defendant at law, Charles H. Ming; that she signed the note with Swayze without consideration, and so lent her name to her husband, and therefore occupied the position of surety for him, and that the note was therefore void as against her. Testimony was taken in support of that application, and the defendant, by order of the justice before whom the application was made, was let in to defend, by an order in these words, after stating the cause:

"It appearing to the court that judgment by default was entered in this case against all of the defendants therein, and that Louisa K. Ming, one of said defendants, has a real defence to the action, it is thereupon ordered that said judgment, as to the said Louisa K. Ming, be opened and she be let in to plead; and it is further ordered that the lien acquired by such judgment and by the execution thereon shall remain as security for the satisfaction of any judgment the said plaintiff may recover against said Louisa K. Ming in said action."

The learned justice, in granting this order, assigned the following reasons: "*First.* This action could not be sustained at law against her [Mrs. Ming] under authority of *National Bank* v. *Brewster, 20 Vr. 231. Second.* If the bank could undoubtedly recover on the note in equity, I should hesitate to open the judgment simply to turn it over to another court, but to recover

in equity I think the bank would have to show a transaction by Mrs. Ming, not with her husband, according to the terms of the note, but with the bank. *Third.* That will raise the other question started, namely, whether the original character of accommodation maker, which plainly was the character Mrs. Ming assumed when she made the note, was afterwards changed by what occurred between her husband and Welsh, and by her receiving and endorsing Welsh's check. I will express no opinion on this, except to say that if that question can be litigated at law, I should think there was in it such a defence that Mrs. Ming ought to be permitted to set it up so that she might review any ruling made thereon, which she could not do if I refused to open the judgment."

The judgment being thus opened, Mrs. Ming duly pleaded— *first, non-assumpsit; second,* that she was at the time when &c. the wife of Charles H. Ming, and the promises set forth in the declaration were promises to secure and pay the debt of another person &c.; *third,* that she was at the time &c. the wife of Charles H. Ming, and the promises and undertakings in the declaration mentioned were contracts between her and her husband, and therefore void at law.

The complainant traversed these pleas, and the resultant issues were noticed for trial by Mrs. Ming at the Morris circuit.

The complainant conceiving that, under the last plea, the defendant must recover, whatever might be the merits of its case under the second plea, filed its bill for relief in this court. Mrs. Ming answered and the cause was brought to hearing.

As soon as the case was opened I stated to the counsel for Mrs. Ming that if he would stipulate on defendant's behalf that, at the trial at law, she would not set up the technical defence that the plaintiff could not recover on account of the form of the contract, under the authority of *Bank* v. *Brewster, 20 Vr. 231,* and would agree to confine herself to the defence that she occupied the position of a surety on the note, I would decline to further proceed with the cause, and would let that question be litigated in the action at law. Counsel for the defendant declined to accede to the offer or in anywise to waive any of his defences

in the action at law.  It being thus rendered manifest that the defendant must prevail at law, without regard to the real merits of the case, and that complainant's only remedy was in equity, I proceeded to hear the cause.

The proofs showed that, in the early part of the month of November, 1891, Charles H. Ming, the husband of the defendant, was indebted to the First National Bank at Morristown in the sum of $1,070 upon a promissory note, and was threatened with suit on it, and was desirous of raising the money to pay it; that on the 18th of November, 1891, he procured his wife and Swayze to make their promissory note, dated on that day, to his order, in the sum of $1,100, payable three months after date; that he started from home with the note with the avowed object of going to Hackettstown, eleven miles distant, to get it discounted at the complainant bank.  On the way he stopped at German Valley—about half way—and saw Mr. Matthias T. Welsh, a director of the complainant bank, showed him the note and asked him to discount it.  Mr. Welsh was well acquainted with Mrs. Ming and knew that she had a fortune of her own, and he also supposed that Mr. Swayze and Mr. Ming were responsible.  No express statement was made to him that the note was an accommodation note.  The expression of Mr. Ming was: "We need the money."  Mr. Welsh stated that he had not the money himself, but would telephone to the cashier of the bank.  He did so, stated to the cashier the names on the note, that he knew Mrs. Ming, and knew her to be responsible and was desirous of accommodating her.  The cashier replied that he might give his check for the amount of the note and send the note over to the bank, and 'the bank would discount it and place the proceeds to his credit in payment of his check, without his endorsement, but directed him to draw his check to the order of Mrs. Ming.  Mr. Welsh thereupon calculated the discount and drew his check to the order of the defendant, Mrs. Ming, for $1,082.80, and handed it to her husband, who handed him the note and took the check immediately to his wife, at their residence, informed her that it was the proceeds of the discount of the note which she had just made, and

requested her to endorse it, which she at once did and handed it back to her husband, who used it immediately to pay the note in the First National Bank at Morristown. This note (of November 8th, 1891) was renewed at maturity and resulted in the note upon which suit was brought.

The question is whether or not it is competent for Mrs. Ming, under the circumstances, to set up and be allowed the defence that she was a mere accommodation maker of the note.

The transaction should be considered as one, in the first place, between the bank, acting through Mr. Welsh, its director, and Mr. Ming, though I do not perceive that it would make a particle of difference if it be viewed as one between Mr. Welsh and Mr. Ming. In either case, under the circumstances, whatever was notice to Welsh was notice to the bank.

If Ming had simply presented the note to Mr. Welsh and asked for its discount in the ordinary way, and had not used the plural " we " or otherwise expressed himself in such a manner as to lead Welsh to believe that his wife was interested in the proceeds of the discount, I should be of the opinion that she would be estopped from setting up that she was a mere surety. Our act (*Rev. p. 637* § *5*) gives a married woman full power to contract for all purposes except suretyship. It is in these words:

" That any married woman shall, after the passing of this act, have the right to bind herself by contract, in the same manner and to the same extent as though she were unmarried, and which contracts shall be legal and obligatory and may be enforced at law or in equity, by or against such married woman, in her own name, apart from her husband; *provided*, that nothing herein shall enable such married woman to become an accommodation endorser, guarantor or surety; nor shall she be liable on any promise to pay the debt or answer for the default or liability of any other person."

There is nothing in the form of the contract—promissory note—signed by her and presented to Mr. Welsh which indicated that she occupied either of the contractual positions forbidden by the statute, viz., endorser, guarantor or surety. She voluntarily placed herself in the position of joint maker of a promissory note, and thereby declared, in the language of the

law-merchant that she was indebted to her husband in the sum named. This would be the force of the contract without the use of the words, "value received," found in this note.

Reason and justice require that a married woman who avails herself of the advantages of the statute law emancipating her from the business trammels which the common law threw around her, and enters into mercantile transactions, should be bound by her acts and representations made in respect thereto, to the same extent as a single woman or a man. This is the view adopted by Mr. Justice Van Syckel at the Union circuit, in *Bank* v. *Craig*, reported in *1 N. J. L. J. 153*, and it is sustained by all the authorities. *2 Herm. Estop.* §§ *1101, 1105 ; Big. Estop. (5th. ed.) 561 ; Bodine* v. *Killeen, 53 N. Y. 93 ; Frecking* v. *Rolland, 53 N. Y. 422 ; Noel* v. *Kinney, 106 N. Y. 74.*

But it is manifest, from what occurred between Welsh and Ming, and between Welsh and the cashier of the bank, that neither Welsh nor the bank was misled by the form of the contract into the belief that it represented an actual indebtedness or was given for an actual consideration. On the other hand, they did not have notice that it was given as a mere accommodation for the husband, and that he alone was to have the proceeds of the discount.

I think the fair inference from the facts is that they had notice simply that the note was given without consideration, and had no vitality until cash or something of value should be advanced upon it. In drawing this inference, I am not sure that I am not going farther in defendant's favor than is warranted by the law-merchant applicable to the circumstances as stated in *Hamilton* v. *Vought, 5 Vr. 187*. But this inference, if justified, does not go the length of charging Welsh and the bank with notice that the proceeds of the note were to be used by the husband for his individual benefit, so that the wife did and would occupy the position of surety upon it. Nor were they obliged by the rules of mercantile law to inquire upon the subject. They had a right to presume that she signed the note as maker for an honest purpose, and that her name at its bottom was intended to mean something. To infer that she signed it as a surety merely

11

was to charge her either with an intention to commit a fraud or to do a vain and idle act, for if it were made known to a proposed purchaser of the note, at· the time of its negotiation, that she signed it as an accommodation maker only, so that her contract was one of suretyship, the result would be to render her name of no value whatever ; and in such case it would be possible to give her name value in no way except by concealing her situation as surety, and so commit a fraud. Whether the wife would or would not occupy the position of surety upon the note in question after its discount, would depend upon what was the agreement between the parties to it as to the immediate disposition of the proceeds of such discount. If, by the agreement of the parties, the proceeds of the discount were to be applied to the use of the wife alone, or of all the parties in a joint enterprise, she would never occupy such position. In this situation the complainant might well say, and I think it had a right to say, " We do not wish to run any·risk as to the liability of the wife on this note, and we do not propose to have our right against her depend upon the private understanding of the parties as to the future application of the proceeds of its discount. We will lend the money only upon condition that it is to the wife alone, and not to her jointly with others or to her husband."

Assuming, then, that Welsh and the bank had notice that the life of the note would commence with its discount, let us consider the effect of what actually occurred. They, in effect, declined to discount it for the husband, and said, in substance, to him : " We will discount this note for your wife, and loan the money on it to her." The husband acquiesced in this proposition, and accepted a check to his wife's order. This action, however, did not bind her in her absence, but left it optional with her either to accept or reject the position of borrower of the money. She was free to refuse to accept and use the check by endorsing it, and she was equally free to accept and use it. No pressure was brought to bear upon her in this behalf by or on behalf of the complainant, nor is there the least glimpse in the proofs or evidence that a scheme was devised by Welsh and the husband to lead the wife unawares into a trap by drawing the check to

her order, as was so earnestly argued by her counsel. The bank officers had the right to presume that the wife was acquainted with mercantile law and knew what would be the effect of her endorsement of the check. She is fairly chargeable with such notice after signing a promissory note as maker, and her evidence shows that she understood the nature and value of the check and the immediate effect of her endorsement.

The drawing of the check to the order of the wife and handing it to the husband was a mere offer of a loan to her on the note. Until she accepted that offer and used the check by endorsing it, the contract of discounting or lending was merely executory. If she refused to accept it, there would be no lending of money, and her husband would be entitled, upon a return of the check to the bank, to have the note returned to him. But the contract was fully completed when she accepted and endorsed the check, and was then, in my judgment, a contract of loaning from the bank to Mrs. Ming, as clearly so, it seems to me, as if she had herself presented the note for discount to the bank officer and had received the proceeds of the discount in money in her own hands, or had received credit for it, as in *Bank* v. *Craig*, on the books of the bank. She thereby became the borrower of the money and liable as such to the bank. And she could not, as against the bank, change her position to one of suretyship by handing the proceeds to her husband for his own personal use. To authorize her to do so would be to enable her to make use of the enabling statute to practice a fraud.

But as the form of the contract is one of a promise by the wife to the husband, by him assigned to the bank, the latter can have no remedy at law, but must come to this court for relief. *Bank* v. *Brewster, 20 Vr. 231; Gould* v. *Gould, 8 Stew. Eq. 37, 562.*

I think it worthy of remark that, if the defendant had so framed the rule opening the judgment as to confine her defence at law to the merits, and had refrained from pleading that the contract was between husband and wife and therefore void, the merits of the case might, as it seems to me, have been dealt with at law. It is certainly wholly the fault of the defendant that the complainant was driven into this court, and the result is that

she must be bound by its finding. Complainant having been deprived of the opportunity to prove its case at law and compelled to prove it here, or not at all, it would be gross injustice to compel it to prove it over again in the law court in order to obtain the fruit of its judgment there.

I will advise a decree in favor of complainant, that the defendant be enjoined from setting up any defence at the trial of the action at law, and that complainant recover its costs.